[No. 18414.  *En Banc.*  July 15, 1925.]

MONROE WATER COMPANY, *Respondent,* v. TOWN OF MONROE, *Appellant.*[1]

WATERS (83)—PUBLIC SUPPLY—POWERS OF DEPARTMENT OF PUBLIC WORKS—"CONTRACTS." The word "contract" in Rem. Comp. Stat., § 10310, prohibiting gas, electric or water companies from extending to any person or corporation any "contract," rule, or privilege not regularly extended to others, has reference to contracts between the public utility company and its customers and not to franchise contracts with the municipality (overruling, on rehearing, Id., 130 Wash. 351).

SAME (83)—TERMINATION OF FRANCHISE CONTRACTS—POWER OF DEPARTMENT—STATUTES—CONSTRUCTION. The department of public works has no authority to abrogate the franchise provisions of a water company requiring the company to furnish free water to the city for hydrants, street flushing, fountains, and fire extinguishment, notwithstanding Rem. Comp. Stat., § 10390, vesting in the department the power to prescribe rates and charges where the rates charged are unjust, unreasonable or inadequate (overruling, on rehearing, Id., 130 Wash. 351).

[1]Reported in 237 Pac. 996.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered May 7, 1923, in favor of the plaintiff, in an action to recover water charges, tried to the court upon an agreed statement of facts. Reversed.

*Cooley, Horan & Mulvihill*, for appellant.

*Robert M. Jones*, for respondent.

*Thomas J. L. Kennedy, Walter B. Beals*, and *A. C. Van Soelen*, amici curiae.

## ON REHEARING.

HOLCOMB, J.—This case was heard in Department and a decision rendered affirming the judgment of the trial court in *Monroe Water Co. v. Town of Monroe,* 130 Wash. 351, 227 Pac. 516. On petition of appellant a rehearing was granted and the case has been twice heard *En Banc.*

The facts involved are stated in the cited opinion, and it is only necessary to refer briefly thereto. On a rehearing before the department of public works, that body abrogated the portion of the franchise granted by appellant to respondent whereby respondent was to furnish appellant with free water for the extinguishment of fires, free water for street flushing on paved streets, free water for drinking fountains for man and beast, and free hydrant rentals for hydrants then or thereafter placed in the town connected with the water system. A new order was entered requiring the town to pay to respondent $1,000 per year for water supplied to the first thirty hydrants in use in the town, and $24 per year for each additional hydrant. This is the order affirmed by the trial court and affirmed in the Departmental opinion.

Although not of vital importance, the Departmental opinion stated that appellant questioned the constitu-

tional powers of the legislature to vest in the department of public works the right to abrogate contract provisions contained in a franchise. Appellant disclaims such intention, and concedes that this court has declared and reaffirmed such powers in the legislature, but insists that the legislature has not exercised it.

Appellant relies upon the contention that the power given the department under the statutes to regulate rates and charges did not authorize it to abrogate a franchise provision in the nature of a consideration moving to the municipality for granting the franchise. It is insisted, first, that in respect to the protection of the interests of the consuming public at large in which the city has no proprietary financial interest, exclusive authority to regulate has been conferred upon the board of public works; and second, that the governing body of the municipality is clothed with full power to fix and determine by necessary franchise provisions the consideration it will exact for granting a franchise, and that the department of public works has been granted no power to modify, change, or interfere with such franchise provisions. The first proposition is rested upon *State ex rel. Webster v. Superior Court,* 67 Wash. 37, 120 Pac. 861, Ann. Cas. 1913D 78, L. R. A. 1915C 287, and the second upon cases beginning with *Tacoma Railway & Power Co. v. Tacoma,* 79 Wash. 508, 140 Pac. 565, where we held:

"No power was given to the public service commission (now succeeded by the board of public works) to grant, modify, or abrogate franchises or contracts arising out of franchises, except in regard to rates and the regulation of service in respect to its safety, efficiency, and equality."

We followed that in *Pacific Tel. & Tel. Co. v. Everett,* 97 Wash. 259, 166 Pac. 650, where we held that a municipality in granting franchises had the right to

exact consideration therefor.   In that case the follow-
ing language was used:

"A municipality can, as a condition precedent to the
use of its property, exact of the user such terms and
conditions as it may deem necessary to impose, whether
the property the use of which is granted be held by it
in its governmental or private capacity.   Any person
or corporation accepting the privileges granted must
be held to have accepted them upon the conditions im-
posed, . . ."

We again held in *State ex rel. Tacoma R. &
Power Co. v. Public Service Commission,* 101 Wash.
601, 172 Pac. 890, that there was power conferred upon
the commission to deal with the questions of safety,
efficiency, rates, and quality of service, but none, either
expressly or by necessary implication, to deal with the
questions of franchises, or to modify any of the terms
or conditions that may have previously been imposed.
These decisions were followed and reaffirmed in *Seattle
v. Puget Sound Traction, Light & Power Co.,* 103
Wash. 41, 174 Pac. 464, and in *State ex rel. Seattle v.
Seattle & Rainier Valley R. Co.,* 113 Wash. 684, 194
Pac. 820, 15 A. L. R. 1194.   In the last cited case, the
public service commission contended that it had power
to revoke a franchise provision requiring the public
carrier to carry city policemen and firemen free while
in the discharge of their public duties.   The commis-
sion made an order eliminating that provision, and
requiring the carrier to charge the regular adult fares
to such policemen and firemen.   We decided that the
commission had no such power, and held that the power
granted to it to regulate rates, fares and service, re-
lated only to rates, fares and service as affecting the
general public as distinguished from the proprietary
rights of the municipality granting the franchise.   It
was sought to distinguish that case from the cases of

*State ex rel. Tacoma R. & Power Co. v. Public
Service Commission, supra, and Seattle v. Puget Sound
Traction, Light & Power Co., supra,* but we said in
regard thereto:

"The language in those opinions, selected and de-
pended upon by the appellant, must be understood in
the light of the subjects to which it was directly or
impliedly intended. It referred to rates, fares and
service as related to the rights of the general public as
distinguished from the proprietary rights of the city
granting the franchises. Obviously this is so, for, in
the *Tacoma* case, one of the franchise provisions im-
mediately and directly called in question (similar to
the one in the case at bar) was free transportation to
certain officers and employees of the city, relief from
which it was therein decided the commission was
powerless to consider."

It is contended here, however, by respondent that in
all the foregoing cases we were passing upon a differ-
ent statute. It is true that we were passing upon the
powers conferred under § 10389, Rem. Comp. Stat.
[P. C. § 5580], relating to common carriers. The stat-
ute involved here is § 10390, Rem. Comp. Stat. [P. C.
§ 5581], regulating charges and service of gas, elec-
trical and water companies to be fixed by the commis-
sion. A comparison of the two statutes will clearly·
disclose that there is no difference between them ex-
cept the necessary difference in the words referring to
the public utility regulated, except that in § 10390 the
word "contract" appears, which does not appear in
§ 10389.

The word "contract," as used in § 10390, undoubt-
edly refers to the contract mentioned in § 10365 [P. C.
§ 5556], which is:

"No gas company, electrical company, or water com-
pany shall extend to any person or corporation any
form of contract or agreement, or any rule or regula-

tion or any privilege or facility except such as are regularly and uniformly extended to all persons and corporations under like circumstances.''

Section 10344, Rem. Comp. Stat. [P. C. § 5535], defines ''person'' to include an individual, firm or co-partnership; and ''corporation'' to include a corporation, company, association, or joint stock association; which clearly does not include municipal corporations. Hence, the contracts referred to in § 10390 evidently have to do with contracts entered into between a public utility and members of the consuming public, and have nothing to do with contracts entered into between such public utility and the municipality which granted it the franchise under which it operates.

The majority of the court are therefore convinced that the applicable provisions of the statute relating to regulation by the department of public works are the same as the applicable provisions of the statute relating to public carriers, considered and decided in the aforecited cases. The statutes being practically identical, the same decisions should govern both.

The Departmental decision is, therefore, now overruled, and the judgment of the lower court and of the department of public works are reversed.

TOLMAN, C. J., MACKINTOSH, MITCHELL, and ASKREN, JJ., concur.

BRIDGES, J. (concurring)—Section 10389, Rem. Comp. Stat. [P. C. § 5580], relating to common carriers, and § 10390, Rem. Comp. Stat. [P. C. § 5581], with reference to gas, electrical and water companies, expressly authorize the department of public works to regulate rates to be charged the public. I have long been of the opinion that, under these statutes, any charter provision which directly affected rates might be changed or annulled by the state authorities. This view has led

me to be somewhat out of harmony with *State ex rel. Tacoma R. & Power Co., v. Public Service Commission,* 101 Wash. 601, 172 Pac. 890, and the cases following it, which hold that franchise provisions could not be modified in so far as a public carrier was concerned. At the time the Department opinion in this case was written I signed it because I then thought that the statutes affecting water companies could be distinguished in the respect under discussion from those affecting public carriers. Perhaps my preconceived ideas made it easier for me to see such supposed distinction. A further consideration of the matter, however, convinces me that the difference between the two sections is not sufficient to justify giving one meaning to one and another to another, and since the court desires to adhere to its former holdings on these matters, I acquiesce and concur in the foregoing opinion.